# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARTIN SHKRELI, | : |
| Plaintiff, | : CIVIL ACTION |
| v. | : Case No. 1:19-cv-5084 |
| LEE YAFFE | : |
| Defendant. | : *Jury Trial Demanded* |

Martin Shkreli, through his undersigned counsel, files this Complaint against Lee Yaffe for fraud.

The origins of this dispute began in 2007 when George Yaffe, at the recommendation and advice of his son, Lee Yaffe, made a $100,000 investment in Mr. Shkreli's "Elea" hedge fund. As experienced investors, both George and Lee Yaffe knew there is no guarantee of a return on an investment in a hedge fund, one of the riskiest vehicles for investing. After George Yaffe lost his investment in Elea, Lee Yaffe talked Mr. Shkreli into making a promissory note for $250,000 to George Yaffe for the lost investment. Although he had no legal obligations to pay any money to George Yaffe, Mr. Shkreli was persuaded into making a note by Lee Yaffe, who insisted that paying George Yaffe was the "right thing" to do and that Mr. Shkreli should "man up."

Mr. Shkreli, who looked up to Lee Yaffe (18 years Mr. Shkreli's senior) at the time, accepted Lee Yaffe's advice and made a note for $250,000 to George Yaffe. Mr. Shkreli's reliance on Lee Yaffe's advice was understandable. Lee Yaffe was a founder and longtime

principal of Leerink Swann, LLC, a premier healthcare investment bank. Although no longer with Leerink Swann, Lee Yaffe remained involved in the healthcare industry and enjoyed advising Mr. Shkreli about the healthcare industry. Mr. Shkreli had recently started Retrophin, Inc., a then upcoming public biopharmaceutical company, and was receptive to advice from Lee Yaffe relating to the healthcare industry and investments.

As a result, Mr. Shkreli made the promissory note in favor of George Yaffe for $250,000 (more than double George Yaffe's investment). The promissory note was invalid as a matter of New York law because it was given for no consideration and was not given as payment of an antecedent obligation or debt. The promissory note was the product of fraudulent representation made by Lee Yaffe that Mr. Shkreli must do the "right thing." Lee Yaffe, a sophisticated investor and longtime broker who spent many years on Wall Street, knew Mr. Shkreli did not owe George Yaffe anything. The promissory note also included a usurious compound interest provision that is invalid under New York law.

Despite the illegality of the promissory note, Lee Yaffe directed his father George Yaffe to start an action to collect on the note. The New York state court entered a default judgment in the amount of $420,000. As a result of Lee Yaffe's fraud, Mr. Shkreli has a $420,000 judgement against him.

**Parties**

1. Martin Shkreli is an adult individual who is domiciled in New York, New York.

2. Lee E. Yaffe is an adult individual who resides in Delray Beach, Florida.

**Jurisdiction and Venue**

3. This Court has subject matter jurisdiction under 28 U.S.C. § 1332, as Mr. Shkreli seeks damages in this civil action in excess of $75,000 and complete diversity of citizenship exists between Mr. Shkreli and Lee Yaffe.

4. Personal jurisdiction over Defendant is proper in this Court because the events giving rise to the matter in controversy, and the harm suffered by Mr. Shkreli, a New York resident, occurred in New York.

5. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) since a substantial part of the events and omissions giving rise to Mr. Shkreli's claims occurred in this district.

**Factual Background**

6. On or around March 30, 2007, George Yaffe entered into an investment agreement with Elea Alpha LP ("Elea Alpha"), a Delaware limited partnership, and Elea Investors LLC ("Elea Investors"), a Delaware limited liability company that was the general partner of Elea Alpha.

7. Under the terms of the investment agreement, George Yaffe invested $100,000 in Elea Alpha, a small New York-based hedge fund which invested in biotech and healthcare companies. A copy of the investment agreement is attached as **Exhibit "A."**

8. Mr. Shkreli was the founding and managing member of Elea Alpha and Elea Investors, as well as Elea Capital Management, LLC ("Elea Capital") and Elea Partners LP ("Elea Partners") (collectively, Elea Alpha, Elea Investors, Elea Capital and Elea Partners are referred to as the "Elea Fund").

3

9. George Yaffe was introduced to Mr. Shkreli by his son, Lee Yaffe, who was professionally acquainted with Mr. Shkreli. Specifically, Lee Yaffe was an informal advisor to Mr. Shkreli, who looked up to Lee Yaffe.

10. Before, during, and after George Yaffe invested in the Elea Fund, Lee Yaffe advised Mr. Shkreli frequently about investment ideas in the healthcare sector.

11. Lee Yaffe oversaw George Yaffe's investment in the Elea Fund. Lee Yaffe advised George Yaffe regarding George Yaffe's investment in the Elea Fund, and recommended he make such investment.

12. The Elea Fund was unsuccessful and was discontinued by Mr. Shkreli in late 2007.

13. As a result of the Elea Fund's poor performance, George Yaffe lost the $100,000 investment.

14. Despite the Elea Fund's poor performance, Mr. Shkreli and Lee Yaffe remained on good terms and in contact from 2007 through 2012.

15. After George Yaffe lost his investment in Elea, Lee Yaffe talked Mr. Shkreli into making a promissory note for $250,000 to George Yaffe for the lost investment.

16. Mr. Shkreli, who looked up to Lee Yaffe (18 years Mr. Shkreli's senior) at the time, accepted Lee Yaffe's insistent "advice" that Mr. Shkreli must "do the right thing" and made a note for $250,000 to George Yaffe. A copy of the promissory note is attached as **Exhibit "B."**

4

17. Although he had no legal obligations to pay any money to George Yaffe, Mr. Shkreli made the note based on Lee Yaffe's representation that paying George Yaffe was the "right thing" to do and that Mr. Shkreli should "man up."

18. Mr. Shkreli's reliance on Lee Yaffe's persistent advice was understandable. Lee Yaffe was a founder and longtime principal of Leerink Swann, LLC, a premier healthcare investment bank.

19. Although no longer with Leerink Swann at the time, Lee Yaffe remained involved and connected in the healthcare industry and advised Mr. Shkreli about the healthcare industry.

20. Mr. Shkreli, who had recently started Retrophin, Inc., a then upcoming public biopharmaceutical company, was receptive to advice from Lee Yaffe, especially any advice relating to the healthcare industry and investments. Mr. Shkreli also appreciated Lee Yaffe's many connections in the healthcare industry, which Lee Yaffe frequently touted to Mr. Shkreli.

21. As a result, Mr. Shkreli made the $250,000 promissory note in favor of George Yaffe.

22. The promissory note was invalid as a matter of New York law because it was given for no consideration. In other words, the promissory note was the product of fraudulent representation made by Lee Yaffe that Mr. Shkreli do the "right thing," especially if Mr. Shkreli were to remain a respected figure in the healthcare industry.

23. The promissory note also included a usurious compound interest provision that is invalid under New York law.

5

24. Despite the illegality of the promissory note, Lee Yaffe directed his father George Yaffe to start an action to collect on the note. The New York state court entered a default judgment in the amount of $420,000, which is the subject of a pending appeal.

25. As a result of Lee Yaffe's fraud, Mr. Shkreli has a $420,000 judgement against him.

## COUNT I – FRAUD
### (Martin Shkreli v. Lee Yaffe)

26. The allegations set forth in the above paragraphs are incorporated herein by reference as if fully set forth herein.

27. Lee Yaffe, by acts of omission, concealment, non-disclosure, and misrepresentations, falsely advised Mr. Shkreli that making a $250,000 promissory note in favor of George Yaffe was the "right thing" to do.

28. As a young entrepreneur who had recently started a biotech company, Retrophin, Mr. Shkreli believed making a $250,000 promissory note to George Yaffe was the "right thing" to do.

29. Mr. Shkreli believed accepting Lee Yaffe's advice was necessary to remain a respected figure in the healthcare industry.

30. In reliance on Lee Yaffe's advice, Mr. Shkreli did make a promissory note for $250,000 in favor of George Yaffe. See **Exhibit "B."**

31. Since Mr. Shkreli had no legal obligations to pay any money to George Yaffe, the promissory note is invalid and unenforceable under New York law.

32. Despite knowing the illegality and unenforceability of the promissory note, Lee Yaffe directed his father George Yaffe to start an action to collect on the note. The New York state court entered a default judgment in the amount of $420,000.

33. As a result of Lee Yaffe's fraud, Mr. Shkreli has a $420,000 judgement against him.

34. As a direct and proximate result of Mr. Shkreli's reliance on the statements and representations made to him by Lee Yaffe, Mr. Shkreli has suffered significant damage.

35. The foregoing acts of Lee Yaffe were done intentionally, wantonly, willfully, and maliciously, warranting the imposition of punitive damages.

**WHEREFORE,** Mr. Shkreli demands entry of a judgment in his favor and against Defendant Lee Yaffe for an amount to be determined at trial, including an award of compensatory damages, punitive damages, pre- and post-judgment interests, costs, and other such relief as this Court deems just and appropriate under the circumstances.

Respectfully submitted,

**KANG HAGGERTY & FETBROYT LLC**

By: *s/ Edward T. Kang*
Edward T. Kang
Kandis L. Kovalsky (*Pro Hac Vice to be filed*)
*Attorneys for Plaintiff, Martin Shkreli*

Dated: September 6, 2019