**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| MARTIN SHKRELI, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | Case No. 1:19-cv-5084 |
| LEE YAFFE | : | |
| | : | |
| Defendant. | : | |
| | : | |

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
### DEFENDANT'S MOTION TO DISMISS

KANG HAGGERTY & FETBROYT LLC
Edward T. Kang
Kandis L. Kovalsky
123 South Broad Street, Suite 1670
Philadelphia, Pennsylvania 19109
ekang@khflaw.com
kkovalsky@khflaw.com
P: (215) 525-5850
F: (215) 525-5860
*Attorneys for Plaintiff, Martin Shkreli.*

Date: December 16, 2019

# **TABLE OF CONTENTS**

TABLE OF CONTENTS.........................................................................................i

TABLE OF AUTHORITIES ...............................................................................ii

   I.    Introduction  ...............................................................................1

   II.   Background ...................................................................................3

        A.   Factual Background........................................................................3

        B.   Procedural Background ...............................................................5

   III.   Argument ....................................................................................5

        A.   Legal Standard...............................................................................5

        B.   The Fraud Claim Against Lee Yaffe is Within New York's Six-Year Statute of Limitation .........................................................7

        C.   The Complaint States a Claim for Fraud Against Lee Yaffe Under Rule 9(b)...............................................................................10

        D.   In the Alternative, Plaintiff Should Be Given an Opportunity to Amend ...........................................................................................14

   IV.   Conclusion...................................................................................15

## <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

*Allen v. WestPoint-Pepperell, Inc.*,
   945 F.2d 40, 44 (2d Cir. 1991) ............................................................................. 4, 5

*Amaya v. Roadhouse Brick Oven Pizza, Inc.*,
   285 F.R.D. 251 (E.D.N.Y. 2012) ............................................................................. 14

*Anderson News, L.L.C. v. Am. Media, Inc.*,
   680 F.3d 162 (2d Cir. 2012) ...................................................................................... 6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................ 5, 6

*Assam v. Deer Park Spring Water, Inc.*,
   163 F.R.D. 400 (E.D.N.Y. 1995) ............................................................................. 15

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................ 5, 6

*Caputo v. Pfizer, Inc.*,
   267 F.3d 181 (2d Cir. 2001) .................................................................................... 11

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
   752 F.3d 173 (2d Cir. 2014) .................................................................................... 13

*Cohen v. S.A.C. Trading Corp.*,
   711 F.3d 353 (2d Cir. 2013) .................................................................................... 11

*Connaughton v. Chipotle Mexican Grill*,
   135 A.D.3d 535 (1st Dep't 2016) ....................................................................... 8, 10

*Crigger v. Fahnestock and Co., Inc.*,
   443 F.3d 230 (2d Cir. 2006) ...................................................................................... 7

*D.C.R. Trucking & Excavation, Inc. v. Aetna Cas. and Sur. Co.*,
   No. 96-cv-3995, 2002 WL 32096594 (E.D.NY. Oct. 31, 2002) ............................. 15

*Elias v. Rolling Stone LLC*,
   872 F.3d 97 (2d Cir. 2017) ........................................................................................ 5

*Fredericks v. Goldschmidt*,
   No. 89-cv-5661 (WK), 1991 WL 18159 (S.D.N.Y. Feb. 5, 1991) ........................... 14

*Gabriel Capital L.P. v. NatWest Fin., Inc.,*
    94 F. Supp. 2d 491 (S.D.N.Y. 2000) ........................................................................... 12

*Harris v. Mills,*
    572 F.3d 66 (2d Cir. 2009) .............................................................................................. 6

*Hosking v. New World Mortg., Inc.,*
    602 F. Supp. 2d 441 (E.D.N.Y. 2009) ........................................................................ 15

*In re Rubin Bros. Footwear, Inc.,*
    119 B.R. 416 (S.D.N.Y. 1990) ..................................................................................... 14

*Innovation Ventures, LLC v. Ultimate One Distrib. Corp.,*
    No. 12-cv-5354, 2014 WL 1311979 n.4 (E.D.N.Y. Mar. 28, 2014) ........................ 12

*Introna v. Huntington Learning Centers, Inc.,*
    78 A.D.3d 896 (2d Dep't 2010) ..................................................................................... 7

*Kronos, Inc. v. AVX Corp.,*
    81 N.Y.2d 90 (1993) .............................................................................................. 7, 8, 9

*Lasker v. New York State Elec. & Gas Corp.,*
    85 F.3d 55 (2d Cir. 1996) ............................................................................................ 13

*Local 875 I.B.T. Pension Fund v. Pollack,*
    992 F. Supp. 545 (E.D.N.Y. 1998) ............................................................................. 11

*M.E.S., Inc. v. Safeco Ins. Co. of Am.,*
    No. 10-cv-02798, 2014 WL 2931398 (E.D.N.Y. June 27, 2014) ............................. 11

*Magnaleasing, Inc. v. Staten Island Mall,*
    563 F.2d 567 (2d Cir. 1977) ........................................................................................ 14

*Milanese v. Rust-Oleum Corp.,*
    244 F.3d 104 (2d Cir. 2001) ........................................................................................ 15

*Monahan v. N.Y. City Dep't of Corrections,*
    214 F.3d 275 (2d Cir. 2000) ........................................................................................ 15

*Nettis v. Levitt,*
    241 F.3d 186 (2d Cir. 2001) .......................................................................................... 6

*Novak v. Kasaks,*
    216 F.3d 300 (2d Cir. 2000) ........................................................................................ 13

*Rombach v. Chang,*
    355 F.3d 164 (2d Cir. 2004) ........................................................................................ 13

*Shema Kolainu-Hear Our Voices v. ProviderSoft, LLC,*
   832 F. Supp. 2d 194 (E.D.N.Y. 2010) ................................................................... 12

*State Farm Mut. Auto Ins. Co. v. Valery Kalika,*
   No. 04-cv-4631, 2006 WL 6176152 (E.D.N.Y. Mar. 16, 2006) ............................. 11

*In re Xerox Corp. Sec. Litig.,*
   165 F.Supp.2d 2018 (D. Conn. 2011) .................................................................... 13

*Zerman v. Ball*,
   735 F.2d 15 (2d Cir. 1984) ............................................................................... 12, 13

Rules

CPLR § 213(8) ................................................................................................................ 7

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 5

Fed. R. Civ. P. 15 ..................................................................................................... 12, 15

Fed. R. Civ. P. 15(a) .................................................................................................... 15

Fed. R. Civ. P. 15(a)(2) ................................................................................................ 14

Fed. R. Civ. P. 15(d) ............................................................................................... 14, 15

Fed. R. Civ. P. 8(a) ....................................................................................................... 10

Fed. R. Civ. P. 9(b) ..................................................................................... 10, 11, 12, 14

Plaintiff Martin Shkreli submits this Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Complaint for failure to state a claim under Rule 12(b)(6).

## I.   __INTRODUCTION__[1]

In an improper attempt to request the Court to rule on the motion based, not on the conduct of Defendant alleged in the Complaint, but on Defendant's spin on Plaintiff's character that does not appear in the four corners of the Complaint, Lee Yaffe disregards the well-known boundaries of a motion to dismiss under Rule 12(b)(6) and attempts to besmirch Mr. Shkreli's character.[2] Yaffe does so through superfluous speculation as to the purported motivation behind this instant action – an irrelevant consideration at this nascent stage. Lee Yaffe's primary explanation that this lawsuit is to "punish [him] for testifying against [Mr. Shkreli] during his criminal trial" makes no sense.  Mr. Shkreli was acquitted of the criminal count for which Lee Yaffe was a primary witness (after he flip-flopped on multiple statements given to the FBI in favor of Mr. Shkreli). As such, any testimony Lee Yaffe gave against Mr. Shkreli was unpersuasive and had no bearing on the outcome of Mr. Shkreli's criminal trial.

Lee Yaffe's second rationale that this lawsuit is "to obtain leverage to use against George Yaffe … in ongoing collection proceedings" ignores that it was the default judgment George Yaffe obtained (at Lee Yaffe's direction) against Mr. Shkreli for $420,000 relating to a $100,000 investment made in 2007 that caused the final and necessary element of Mr. Shkreli's claim for fraud (i.e., damage) against Lee Yaffe to accrue. While Lee Yaffe argues that Mr. Shkreli's claim

---

[1] Defendant's extraneous and sometimes gratuitous statements in the Preliminary Statement of his brief have no place in a motion to dismiss and should be disregarded.

[2] For example, Defendant incorrectly states that Mr. Shkreli is serving a sentence in a "federal penitentiary." Mr. Shkreli does not reside at a federal "penitentiary," but rather, a low security Federal Correctional Institution.

for fraud accrued on January 24, 2012 (even though the email evidence shows the promissory note was not signed until after this date), this argument fatally overlooks that a tort claim, unlike a breach of contract claim, cannot be based on nominal damage. As such, Mr. Shkreli's claim for fraud did not accrue merely because he signed a legally invalid promissory note (that should never have been the basis for a default judgment and is the subject of a pending appeal), as he had not yet suffered *actual* damage, a key element of a claim for fraud. Lee Yaffe's first argument – that Mr. Shkreli's claim for fraud is outside the statute of limitations – fails.

Defendant's only other argument in favor of dismissal is that Mr. Shkreli fails to state a claim for fraud under Rule 9(b) because the statements on which Mr. Shkreli relies are mere "puffery" and do not include the specificity required by Rule 9(b). Both of these arguments fail. First, the "puffery doctrine" (also known as the "corporate optimism" doctrine) applies to claims of securities fraud. The doctrine is to prevent actions from proceeding past the motion to dismiss stage where the lawsuit is based on statements that no reasonable investor could find important to the total mix of information available. This doctrine is inapplicable here where the allegation at issue is not one of securities fraud, but rather common law fraud. Further, even if Lee Yaffe's statements are construed as "statements of opinion," it is hornbook law that in New York, such statements are actionable as fraudulent where they are made intentionally. Mr. Shkreli has alleged that Lee Yaffe made misrepresentative statements with intent to deceive.

Second, Mr. Shkreli has stated his claim with the specificity required under Rule 9(b) to put Lee Yaffe on notice of the nature of the fraud alleged against him. Mr. Shkreli has stated specific statements that were made by Lee Yaffe and has supplemented the record with additional emails (all of which Lee Yaffe already has) that support his claim for fraud. These statements and emails show that Lee Yaffe misrepresented to Mr. Shkreli that he (Mr. Shkreli) had an affirmative,

legal obligation to personally pay George Yaffe for George Yaffe's failed investment in Mr. Shkreli's hedge fund in 2007, when Mr. Shkreli did not legally have any such obligation, and then induced Mr. Shkreli to sign an unlawful promissory note for no consideration in direct contravention of New York law. Mr. Shkreli has pled a clear case of fraud against Lee Yaffe, and the motion to dismiss should be denied.

## II.   BACKGROUND

### A.   Factual Background

On or around March 30, 2007, George Yaffe entered into an investment agreement with Elea Alpha LP ("Elea Alpha"), a New York-based hedge fund (collectively, with Elea Capital Management LLC and Elea Partners LP, the "Elea Fund") which invested in biotech and healthcare companies, under which he invested $100,000. Complaint, ECF Doc. No. 1, ¶¶ 6, 7, 8. Martin Shkreli was the founding and managing member of Elea Alpha. *Id.,* ¶ 8. George Yaffe was introduced to Mr. Shkreli by his son, Defendant Lee Yaffe, who was an informal advisor on investments in the healthcare sector to the younger Shkreli. *Id.*, ¶¶ 9, 10, 16. Lee Yaffe recommended that George Yaffe invest in the Elea Fund, and thereafter, oversaw such investment. *Id.*, ¶ 11. The Elea Fund was not successful and was discontinued by Mr. Shkreli in late 2007. *Id.*, ¶ 12. George Yaffe lost his $100,000 investment in the Elea Fund. *Id.*, ¶ 13.

Thereafter, Lee Yaffe, who remained cordial to Mr. Shkreli despite the Elea Fund's failure, directed and advised Mr. Shkreli he should personally make a promissory note for $250,000 to George Yaffe for the $100,000 investment George Yaffe lost. *Id.*, ¶¶ 14, 15. Specifically, Lee Yaffe insisted to Mr. Shkreli that he must "do the right thing" and "man up" even though Mr. Shkreli had no personal liability to George Yaffe, which Lee Yaffe, as a longtime and experienced

investor,[3] knew. *Id.*, ¶¶ 16, 17. The undertone of Lee Yaffe's repeated "suggestions" to Mr. Shkreli on this front was that if Mr. Shkreli, a then up-and-comer on Wall Street and in the biotech-pharmaceutical world, wanted to remain relevant, he better "do the right thing" and give George Yaffe money. *Id.*, ¶ 22.

Eventually, Mr. Shkreli succumbed to Lee Yaffe's incessant pressure and demands and made a $250,000 promissory note to George Yaffe. *Id.*, ¶ 21 & Ex. B. As the promissory note accurately states, it was given by Mr. Shkreli in favor of George Yaffe for no consideration. *Id.*, ¶ 22 & Ex. B. Under New York law, which governs, the promissory note is invalid since it was given for no consideration. *Id.* Further, the promissory note contains an invalid usurious compound interest provision. *Id.*, 23 & Ex. B. Despite the illegality of the promissory note, Lee Yaffe directed his father, George Yaffe, to start an action to collect on the promissory note, which resulted in a default judgment in the amount of $420,000. *Id.*, ¶¶ 24, 25. This default judgment remains the subject of a pending appeal in which Mr. Shkreli filed his opening appellate brief on December 12, 2019. *Id.,* ¶¶ 24, 25; *see also, George Yaffe v. Martin Shkreli,* App. Div. # 2019-4898, Supreme Court of the State of New York, Appellate Division, First Department.[4]

---

[3] Lee Yaffe was a founder and longtime principal of Leerink Swann, LLC, a premier healthcare investment bank in the United States. *Id.*, ¶ 18.

[4] Defendant's erroneous conclusions in footnote 1 of ECF Doc. No. 14-1 should be disregarded, particularly at this nascent stage. *See Allen,* 945 F.2d at 44, *infra.* Contrary to Defendant's improper allegations, Mr. Shkreli has no obligation "to tell the full story of the relationship between Plaintiff and Defendant." Rather, Mr. Shkreli simply has to set forth facts which support a claim. *See infra.* Further, while Defendant cannot help himself but to mention Mr. Shkreli's conviction in each filing to this Court (*see, e.g.,* ECF Doc. No. 10 ("Martin Shkreli … is a serial fraudster who, from his prison cell, continues to manipulate the legal system to his advantage.")) in a seemingly inappropriate attempt to persuade the Court that Mr. Shkreli has somehow lost his rights as a citizen because of his incarceration, this fact is irrelevant to this instant action where it is Lee Yaffe who is being accused of civil fraud. The falsity of Defendant's summary of Mr. Shkeli's trial will be addressed in this case later in detail if it becomes necessary. For instance, after flip-flopping on multiple statements given to the FBI in favor of Mr. Shkreli, Lee Yaffe entered into a non-prosecution agreement and testified as one of the *[con't]*

### B.    Procedural Background

On September 6, 2019, Plaintiff commenced this action. ECF Doc. No. 1. On November 15, 2019, Defendants filed a Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion to Dismiss"). The Motion to Dismiss is now before the Court.

For the reasons alleged in the Complaint, and set forth herein, Plaintiff has stated a claim for fraud against Defendant and is entitled to relief from this Court. Plaintiff pleads detailed allegations with particularity that provide fair notice to Defendant. Accordingly, the Court should deny the Motion to Dismiss.

## III.   ARGUMENT

### A.    Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6) standards, a complaint need only allege "factual content" that, when assumed to be true, "allows the court to draw the reasonable inference" that the plaintiff is entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The Court's review is "limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint-Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir. 1991). In reviewing a motion to dismiss under Rule 12(b)(6), the Court must construe the complaint liberally, accept all factual allegations as true, and draw all reasonable inferences in favor of the plaintiff. *Elias v. Rolling Stone LLC,* 872 F.3d 97, 104 (2d Cir. 2017) (internal citation and quotations omitted).

---

Government's main witnesses for "Count 7" of the superseding indictment against Mr. Shkreli, which stated a crime for conspiracy to commit wire fraud against Retrophin. Mr. Shkreli was acquitted of this Count.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557) (internal citation omitted).

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (noting the facial plausibility standard "is not akin to a 'probability requirement'"); *see also, Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) ("A court ruling on [a motion to dismiss] may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible."). "'[D]etermining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679). A complaint should not be dismissed unless it can be shown that the plaintiff will be unable to set forth any facts which would allow him or her to prevail in the case. *Nettis v. Levitt*, 241 F.3d 186, 191 (2d Cir. 2001).

The Motion to Dismiss fails to meet this standard. Plaintiff has pleaded "allegations respecting all the material elements necessary to sustain recovery" on his claim for fraud against Lee Yaffe. *See Twombly*, 550 U.S. at 562.

### B.    The Fraud Claim Against Lee Yaffe is Within New York's Six-Year Statute of <u>Limitation</u>

Defendant argues that the Complaint is barred by the statute of limitations. This argument fails because Mr. Shkreli did not have a right to damages, a key element of a legal right to relief for a tort claim like fraud, until the default judgment dated November 28, 2018 was entered against him on December 4, 2018. Under the applicable six years statute of limitations period, Mr. Shkreli is well within the requisite period for bringing a claim.

The parties do not dispute that New York law applies to this case. ECF Doc. No. 14-1 at p. 7, fn.3.  Under New York law, which applies here, *supra*, the five elements of a claim for civil fraud are: (1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff. *Crigger v. Fahnestock and Co., Inc.,* 443 F.3d 230, 234 (2d Cir. 2006) (citation omitted); *Introna v. Huntington Learning Centers, Inc*., 78 A.D.3d 896, 898 (2d Dep't 2010).

In New York, New York Civil Practice Law and Rule ("CPLR") § 213(8) provides for a six-year statute of limitations for an action based on fraud. CPLR § 213(8) ("an action based upon fraud; the time within which the action must be commenced shall be the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it.").

New York appellate courts hold that when a plaintiff's cause of action sounds in tort, like here, "as a general proposition, a tort cause of action cannot accrue until an injury is sustained." *Kronos, Inc. v. AVX Corp*., 81 N.Y.2d 90, 94 (1993). In *Kronos*, the court held that "[t]he Statute of Limitations does not run until there is a legal right to relief." *Id.* In other words, "accrual occurs

when the claim becomes enforceable, i.e., when all elements of the tort can be truthfully alleged in a complaint." *Id*. In reaching its decision, the court rejected the defendant's argument that nominal damages be assessed before actual damages in tort cases to calculate the statute of limitations period. *Id.* at 97 ("no cause of action for tortious inducement to breach a contract arises until actual damages are sustained; nominal damages associated with the underlying breach of contract will not stand in the stead of actual damages."). The court explained that:

> In tort … there is no enforceable right until there is a loss. It is the incurring of damage that engenders a legally cognizable right. To recognize nominal damages element of tort claims would be to wrest the cause of action from its traditional purposes – the compensation of *losses* – and to use it to vindicate nonexistent or amorphous inchoate rights when unlike in trespass to property, there is no compelling reason to do so.

*Id.* at 96 (emphasis in original).

While in *Kronos* the claim at issue was one for tortious interference, the court's analysis, as stated above, centered on the fact that a claim arising in tort is not enforceable until the damage is sustained, and that it is the occurrence of the damage, rather than the wrongful act of the defendant or discovery of the injury by plaintiff, that is the relevant date for marking accrual of the claim. As such, contrary to Defendants' argument, the holding in *Kronos* is applicable to all claims arising in tort, including the claim for fraud against Lee Yaffe. *See id.*

Because actual damage is a necessary element of a claim arising in tort, New York courts have dismissed such claims where only nominal damages, and not actual damages, have been alleged. *See, e.g., Connaughton v. Chipotle Mexican Grill,* 135 A.D.3d 535 (1st Dep't 2016). In *Connaughton*, the First Department affirmed the dismissal of Connaughton's claim for fraudulent inducement, holding that fraud requires allegations of actual damage as a result of a plaintiff's reliance on a defendant's misrepresentations. Because damages for fraud are measured by a

plaintiff's actual pecuniary loss as a direct result of the wrong, the First Department held that damages must be for losses already sustained, rather than for losses that may be suffered in the future. *See id.* at 218-219 ("When a claim sounds in fraud, the measure of damages is governed by the 'out-of-pocket' rule, which states that the measure of damages is 'indemnity for the actual pecuniary loss sustained as the direct result of the wrong."). In reaching its decision, the court rejected the notion that a plaintiff can allege a claim of fraud based on nominal damage.

Here, Defendant asks the Court to hold that Mr. Shkreli's claim for fraud against Lee Yaffe accrued on January 24, 2012, the date of the promissory note. Defendant argues that "no other plausible accrual date exists." ECF Doc. No. 14-1 at p. 8. This position is contrary to the courts' holdings in *Kronos* and *Connaughton*. *See supra*. Defendant argues that accepting the courts' holding in *Kronos* "would mean that, if Defendant's father had not attempted to collect on the Note, Plaintiff's claim for fraud would never accrue – clearly an absurd result." ECF Doc. No. 14-1 at p. 8. Defendant's argument is misplaced for being prohibited from filing a tort claim when there has been no accrual of damage is not an "absurd result," but rather, a sensical one. This is especially true here where the promissory note at issue is invalid under New York law. Defendant's statute of limitations argument would have more credibility had the promissory note deemed enforceable. But it is not. The promissory note never should have been enforced in the first place (the subject of the pending appeal). The cause of action for fraud arose when the fraudulent conduct came to a full circle when George Yaffe, acting under Defendant's direction, took steps to collect on the unenforceable note and obtained the default judgment.

If Mr. Shkreli filed an action before the default judgment was entered against him, as Defendant suggests he should have, Defendant would have argued to dismiss the action for want of damage. Under Defendant's theory, Mr. Shkreli, and all plaintiffs alleging torts, would be

forced to file placeholder lawsuits alleging the exact nominal damages precluded in tort actions. *See Kronos, Connaughton, supra.* Under such a scenario, plaintiffs would be filing tort claims in which damages might never accrue, thus further burdening the courts with numerous actions in which plaintiffs have suffered no injury. This argument is not compelling, and there is no reason courts should be saddled with actions for fraud by plaintiffs who have suffered no actual injury, and no reason litigants should have to file such an action to preserve their rights when the injury that flows from the fraud has not yet occurred and occurs many years later.

For the above reasons, Plaintiff's claim for fraud is within the six-year statute of limitations period. If the Court is inclined to dismiss the claim on this argument, Plaintiff seeks leave to amend, *infra*.[5]

### C.     The Complaint States a Claim for Fraud Against Lee Yaffe Under Rule 9(b)

Defendant argues that the Complaint fails to state a claim under Rule 9(b) because (1) "it never asserts that Defendant made a single affirmative misrepresentation of material fact" and (2) it "fails to provide any details concerning the time or place of any of Defendant's statements." ECF Doc. No. 14-1 at pp. 9-11. For the reasons set forth herein, both of these arguments fail.

Rule 9(b) modifies the liberal pleading standard used in ruling on motions to dismiss when the complaint raises claims of fraud. While Rule 8(a) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a), a plaintiff asserting fraud must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) is satisfied when the complaint specifies "the time, place, speaker, and content

---

[5] The allegations stated in the Complaint were not Lee Yaffe's only instance of fraud. Plaintiff and Defendant's business relationship continued in 2012, 2013, 2014 and 2015. Plaintiff can and will alleged additional supplemental facts relating to Lee Yaffe's fraud in 2014 relating to the allegations in the Complaint.

of the alleged misrepresentations;" how the misrepresentations were fraudulent; and the details that "give rise to a strong inference that the defendant[] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth.'" *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013) (quoting *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir. 2001)).

"In reviewing motions to dismiss under Federal Rules of Civil Procedure 9(b) and 12(b)(6), a court is bound to accept as true all factual allegations of the complaint, and draw all inferences in favor of the pleader." *Local 875 I.B.T. Pension Fund v. Pollack*, 992 F. Supp. 545, 561 (E.D.N.Y. 1998) (Gershon, J.); *see also, M.E.S., Inc. v. Safeco Ins. Co. of Am.,* No. 10-cv-02798, 2014 WL 2931398, at *9 (E.D.N.Y. June 27, 2014) (Scanlon, J.) ("[C]ourts reviewing the sufficiency of a complaint take all factual allegations as true and draw all reasonable inferences in the plaintiff's favor. This is equally true in the context of fraud-claim allegations which are subject to FRCP 9(b) pleading requirements."); *State Farm Mut. Auto Ins. Co. v. Valery Kalika*, No. 04-cv-4631, 2006 WL 6176152, at *12 (E.D.N.Y. Mar. 16, 2006) (Pollak, J.) (denying motion to dismiss under Rule 9(b) standard where the argument merely dispute[d] the factual allegations of the Complaint … because the Court is required on a motion to dismiss to accept as true all allegations in the Complaint").

Here, there are numerous emails between Mr. Shkreli and Defendant which form the basis for the allegations in the Complaint; namely, that Lee Yaffe threatened and tricked Mr. Shkreli into assuming a personal obligation to George Yaffe he did not have to make.[6] In these emails, Lee Yaffe is suggesting to Mr. Shkreli that Mr. Shkreli has an affirmative obligation to pay his father, George Yaffe, back for George Yaffe's failed investment in the Elea Fund when that was

---

[6] Although there has not been any discovery in this case, Defendant has these emails. He is a sender and a recipient of them.

not the case. A copy of these emails is attached hereto as **Exhibit "A"** and made a part hereof.[7]
The first email, dated July 14, 2011, from Lee Yaffe to Mr. Shkreli has a subject line of "u get me
some more money for my dad." Ex. A. Mr. Shkreli believed Lee Yaffe, and as such, entered into
the promissory note (albeit a legally unenforceable one).

In other words, the Complaint (and Exhibit A hereto) provides Defendant with sufficient
notice of the nature of his alleged participation in the fraud, so that the absence of any information
does not hamper his defense. *See, e.g., Shema Kolainu-Hear Our Voices v. ProviderSoft, LLC*, 832
F. Supp. 2d 194, 2190 (E.D.N.Y. 2010) (Trager, J.) (finding Rule 9(b) satisfied where complaint
identified the speaker and pinpointed that the statements took place at a meeting in August 2007
and subsequent meetings); *Gabriel Capital L.P. v. NatWest Fin., Inc.*, 94 F. Supp. 2d 491, 504
(S.D.N.Y. 2000) ("Plaintiffs have identified the specific date of the meeting, at least one of the
representatives from both NatWest and McDonald who attended the meeting, and the specific
statements alleged to be fraudulent. Given this level of specificity, plaintiffs have placed NatWest
and McDonald on notice and pleaded their claim with sufficient particularity, despite their inability
to specifically identify the speaker of each statement."); *Innovation Ventures, LLC v. Ultimate One
Distrib. Corp.*, No. 12-cv-5354, 2014 WL 1311979, at *5 n.4 (E.D.N.Y. Mar. 28, 2014)
(Matsumoto, J.) (rejecting the argument that allegations about comments made on a telephone
conference call failed to convey who allegedly made specific fraudulent statements by "lumping
together" the defendants).

Defendant suggests that the allegations in paragraphs 16 and 17 of the Complaint amount
to "puffery," which cannot support a claim for fraud. *See* ECF Doc. No. 14-1 (citing *Zerman v.*

---

[7] Plaintiff requests that these emails be considered as part of the Complaint. Alternatively,
Plaintiff seeks leave to amend the Complaint under Federal Rule of Civil Procedure 15 to add these
emails. *See infra*.

*Ball*, 735 F.2d 15, 21 (2d Cir. 1984)). First, the judge-made doctrine of "puffery" or "corporate optimism" relates to claims for securities fraud.  *See, e.g., City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG,* 752 F.3d 173, 185 (2d Cir. 2014) ("To be 'material within the meaning of § 10(b), the alleged misstatement must be sufficiently specific for an investor to reasonably rely on that statement as a guarantee of some concrete fact or outcome which, when it proves false or does not occur, forms the basis for a § 10(b) fraud claim.")*; Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004); *Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000); *Lasker v. New York State Elec. & Gas Corp.*, 85 F.3d 55 (2d Cir. 1996). Here, Mr. Shkreli has not stated a claim for securities fraud, and the "puffery" doctrine is therefore, unavailable to Defendant.

Second, even if the "puffery doctrine" applied here, which it does not, the sole example Defendant relies on from *Zerman* is inapposite. In *Zerman*, yet another case dealing with securities fraud, the court held that Hutton's advertising slogan "When E.F. Hutton Talks, People Listen" did not constitute a representation of fact that could be actionable under the securities laws. *Zerman*, 735 F.2d at 20-21.

Here, however, Lee Yaffe represented to Mr. Shkreli that he (Mr. Shkreli) had an affirmative obligation to pay George Yaffe back for George Yaffe's failed investment in the Elea Fund, and threatened Mr. Shkreli's relevance in the healthcare industry if he did not do such. In representing that Mr. Shkreli had an affirmative obligation to pay George Yaffe for the investment in the Elea Fund, Lee Yaffe made a misrepresentation of material fact which Defendant knew to be false and with the intention of inducing reliance on such statement by Mr. Shkreli.  Mr. Shkreli did rely on the false representation as evidenced by the emails attached as Exhibit A when he made the promissory note. When a defendant makes a misrepresentation of existing facts, like here, this is actionable fraud, not puffery. *See, e.g., In re Xerox Corp. Sec. Litig.,* 165 F.Supp.2d 2018, 218

(D. Conn. 2011) (plaintiffs' allegations "go beyond claims of mere puffery" because defendants "made specific statements, including … those characterized by the defendants as merely reflecting optimism, knowing that they were contrary to the company's actual situation").

Even if Lee Yaffe's statements are construed as "statements of opinion," (an argument tellingly not made by Defendant) under New York law, it is "hornbook principle" that "statements of opinion may constitute actionable fraud where a present intent to deceive exists." *Magnaleasing, Inc. v. Staten Island Mall*, 563 F.2d 567, 569 (2d Cir. 1977) (citation omitted) (applying New York law); *Fredericks v. Goldschmidt,* No. 89-cv-5661 (WK), 1991 WL 18159, at *7 (S.D.N.Y. Feb. 5, 1991) (denying dismissal of fraud claim on the basis that the misrepresentation alleged was merely an opinion as to value because statements of opinion may constitute actionable fraud); *In re Rubin Bros. Footwear, Inc.*, 119 B.R. 416, 424 (S.D.N.Y. 1990) ("Statements of opinion may constitute actionable fraud."). Under Rule 9(b), a defendant's "intent" may be alleged generally. Fed. R. Civ. P. 9(b). Here, Mr. Shkreli has alleged that Lee Yaffe acted intentionally to dupe Mr. Shkreli into giving the promissory note in favor of George Yaffe. ECF Doc. No. 1, ¶ 35. As such, accepting the facts alleged as true, the Complaint has adequately set forth a claim for fraud under Rule 9(b).

**D.    In the Alternative, Plaintiff Should Be Given an Opportunity to Amend**

Alternatively, should this Court determine that the Complaint lacks sufficient details, Plaintiff respectfully requests leave to amend. Federal Rule of Civil Procedure 15(a)(2) and 15(d). Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P 15(a)(2); *see also, Amaya v. Roadhouse Brick Oven Pizza, Inc*., 285 F.R.D. 251, 253 (E.D.N.Y. 2012) (Tomlinson, J.) ("A court should freely give leave [to amend] when justice so requires and such leave is in the court's discretion." (internal quotation

omitted)); *Assam v. Deer Park Spring Water, Inc.*, 163 F.R.D. 400, 404 (E.D.N.Y. 1995) (Seybert, J.) ("Federal Rule of Civil Procedure 15(a) dictates that motions to amend complaints be liberally granted absent a good reason to the contrary …."); *D.C.R. Trucking & Excavation, Inc. v. Aetna Cas. and Sur. Co.*, No. 96-cv-3995, 2002 WL 32096594, at *8 (E.D.NY. Oct. 31, 2002) (Johnson, J.). Federal Rule of Civil Procedure 15(d) provides, in pertinent part, that "[t]he court may permit supplementation even though the original pleading is defective in stating a claim or defense." Fed. R. Civ. P. 15(d).

In the Second Circuit, leave to amend a complaint "should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001); *Hosking v. New World Mortg., Inc.*, 602 F. Supp. 2d 441, 445 (E.D.N.Y. 2009) (Spatt, J.). "The Rule reflects two of the most important principles behind the Federal Rules: pleadings are to serve the limited role of providing the opposing party with notice of the claim or defense to be litigated … and mere technicalities should not prevent cases from being decided on the merits." *D.C.R. Trucking*, 2002 WL 32096594, at *8 (quoting *Monahan v. N.Y. City Dep't of Corrections*, 214 F.3d 275, 283 (2d Cir. 2000)).

Here, there is no evidence of undue delay, bad faith, or undue prejudice to Defendant. As such, if the Court is included to grant the Motion to Dismiss, and dismiss the Complaint, Plaintiff requests an opportunity to amend the Complaint.

## IV.    **CONCLUSION**

For all the above reasons, this Court should deny the Motion to Dismiss. Alternatively, Plaintiff respectfully requests that he be given thirty (30) days to amend the Complaint under Federal Rule of Civil Procedure 15.

Respectfully submitted,

KANG HAGGERTY & FETBROYT LLC

*/s/ Edward T. Kang*
Edward T. Kang
Kandis L. Kovalsky (*Pro Hac Vice*)
123 South Broad Street, Suite 1670
Philadelphia, PA 19109
ekang@KHFlaw.com
kkovalsky@KHFlaw.com
P: (215) 525-5850

*Attorneys for Plaintiff, Martin Shkreli*

Dated: December 16, 2019
         Philadelphia, Pennsylvania